## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

JOHN K. FARMER and
JANEEN FARMER,

                Plaintiffs,

v.                                CIVIL ACTION NO.   5:10-cv-01111

EDWARD F. DOLPHIN,

                Defendant.


### MEMORANDUM OPINION AND ORDER

      John K. Farmer and his wife, Janeen Farmer, bring this civil action against Summers County Sheriff Edward F. Dolphin alleging civil rights violations and common law tort claims of wrongful discharge, outrageous conduct and loss of consortium in relation to Plaintiff John K. Farmer's termination and reinstatement as a Deputy Sheriff.

      The Court has reviewed the parties' pleadings, Defendant's Motion for Summary Judgment ("Def.'s Mot.") (Document 61), and the memoranda filed in support of and in opposition to that motion.   For the reasons that follow, the Court grants Defendant's motion.

### I.  BACKGROUND

      Plaintiff John Farmer ("Farmer") began working as a deputy sheriff in the Summers County Sheriff's Department on February 1, 2005.   At some point thereafter, then Sheriff Garry E. Wheeler promoted Farmer to Chief Deputy Sheriff.   On January 1, 2009, Defendant Edward F. Dolphin replaced Wheeler as the Sheriff of Summers County.   Farmer continued to serve in the

capacity of Chief Deputy under Defendant Dolphin, until April 27, 2009.   On that day, Defendant

notified Farmer by letter that he had elected to "exercise[e] [his] option on choosing [his] Chief

Deputy[]" and that Farmer would be terminated from the department effective immediately.

(Def.'s Ex. 2, Letter from Defendant to John Farmer (April 27, 2009) (Document 61-2)).

Defendant declared that he had "carefully examined all aspects of the operation of the Summers

County Sheriffs [sic] Department" over the preceding four months and concluded "that a change in

the Chief Deputy's position [wa]s needed." (*Id.*)   Dolphin also stated that a new Chief Deputy

would be appointed in June of 2009, but that Farmer would receive his "normal pay until May 15,

2009." (*Id.*)   No further explanation was provided for Farmer's termination.   The following day,

Defendant promoted Deputy James Chellis to the position of Chief Deputy and Deputy Thomas J.

Cochran to the rank of Corporal. (Pls.' Ex. W, Memorandum from Defendant (Apr. 28, 2009)

(Document 63-6)).[1]

On May 7, 2009, Farmer, through an attorney, filed a Grievance with the Summers County,

West Virginia Deputies' Civil Service Commission ("the Commission"), wherein he requested

"[r]einstatement to [the] Summers County Sheriff's Department as Deputy Sheriff with full

make-whole relief as to pay and benefits." (Pls.' Ex. H, Grievance on Behalf of John K. Farmer

(Document 63-2)).   In support of his request, Farmer asserted that he was terminated in violation

of West Virginia Codes §§ 7-14-13, 7-14-17[2] and the West Virginia Constitution, among other

---

[1]   At some point, Deputy Cochran was advised by the Civil Service Commission that until he completed a corporal examination he was permitted to serve only as the acting corporal. (Pls.' Ex. T, Transcript of Thomas J. Cochran on January 23, 2012 (Document 63-5) at Tr. 8).   Consequently, the Commission sent a corporal and sergeant test to Cochran.   (*Id*. at 7.)   Following the examination, Defendant Dolphin determined that Cochran was to be placed in the sergeant position. (*Id*.)

[2]   West Virginia provides for the establishment, powers and duties of county civil service commissions for deputy sheriffs in Chapter 7, Article 14 of the West Virginia Code.   In the applicable section governing vacancies filed by promotions, West Virginia law requires that the criteria for deputy sheriff promotions include seniority and

authorities.[3]   (*Id.*)   Four days later, Defendant Dolphin, in a letter to Farmer's attorney, reinstated Farmer to the position of Deputy Sheriff as requested.[4]   (Pls.' Ex. I, Letter from Defendant to William D. Turner, Esq. (May 11, 2009) (Document 62-2).   Defendant notified Farmer that he was not "aware of any 'relief' to be made to Mr. Farmer" since Farmer had been receiving the salary of Chief Deputy since his termination. (*Id.*)   However, he indicated that Farmer's salary would be adjusted downward from the Chief Deputy position. (*Id.*)   A copy of the Reinstatement Letter was forwarded to the Summers County Civil Service Commission Clerk. (*Id.*)   Based on the record before the Court, it does not appear that the Summers County Civil Service Commission took any action with respect to Farmer's Grievance or that he sought any further relief from the

competitive examinations.   *See* W. Va. Code § 7-14-13.   Further, Section 7-14-17(a) provides:

> No deputy sheriff . . . may be removed, discharged, suspended or reduced in rank or pay except for just cause . . . and no such deputy may be removed, discharged, suspended or reduced in rank or pay . . . in no event until the deputy has been furnished with a written statement of the reasons for the action. In every case of such removal, discharge, suspension or reduction, a copy of the statement of reasons therefor and of the written answer thereto, if the deputy desires to file such written answer, shall be furnished to the civil service commission and entered upon its records. If the deputy demands it, the civil service commission shall grant a public hearing, which hearing shall be held within a period of ten days from the filing of the charges in writing or the written answer thereto, whichever shall last occur. At the hearing, the burden shall be upon the sheriff to justify his or her action, and in the event the sheriff fails to justify the action before the commission, then the deputy shall be reinstated with full pay, forthwith and without any additional order, for the entire period during which the deputy may have been prevented from performing his or her usual employment, and no charges may be officially recorded against the deputy's record. The deputy, if reinstated or exonerated, shall, if represented by legal counsel, be awarded reasonable attorney fees to be determined by the commission and paid by the sheriff from county funds.

W. Va. Code § 7-14-17(a).   The Supreme Court of Appeals of West Virginia has defined the term "just cause" as "misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without a wrongful intention." *Mangum v. Lambert*, 394 S.E.2d 879, 883 (W. Va. 1990).

3     It does not appear from the record before the Court that Farmer sought a further statement of reasons for his termination or filed a written answer as is contemplated by Section 7-14-17(a).

4     During the Civil Service Commission Hearing that followed Farmer's November 2009 termination, Defendant testified that he decided to terminate Farmer because he "had lost all trust in Mr. Farmer's ability to perform in a manner which I expected[,]" and that he was later reinstated because of "the way that the termination letter was given to him."   (Pls.' Ex. J, Transcript of Hearing before the Summers County, West Virginia Deputy Sheriff Civil Service Commission (Feb. 22, 2010) (Document 63-2) at Tr. 134-35).

Summers County Civil Service Commission.   During his deposition, Farmer acknowledged that since he was reinstated, there was no need to go through the civil service process. (Def.'s Ex. 1, Transcript of Farmer (Document 61-1) at Tr. 173.)

Following his reinstatement on May 11, 2009, Farmer was excused by his medical provider from work during the period of May 19, 2009 to July 2, 2009.   (Pls.' Ex. M, Monroe Health Center Work Excuses (Document 63-3)).   On June 5, 2009, while Farmer was on sick leave, Defendant, in a letter addressed to Farmer, identified "[s]everal issues" brought to his attention that required immediate resolution.   (*See* Pls.' Ex. N. Letter from Defendant to Farmer (June 5, 2009) (Document 63-3)).   In the letter, Defendant: (1) requested information from Farmer about the basis of his sick leave and a written statement about the amount of sick leave and vacation time available to Farmer and the other deputies; (2) advised Farmer that his last weapons qualification was in October 2007 and that he needed to turn in his weapon immediately until he returned to work and completed the qualification; (3) informed Farmer that an internal affairs investigation had been initiated about his handling of evidence in light of the knife, syringes, and "CDS" found in his office and desk following his April termination; and (4) requested an immediate written explanation about the unsecured items. (*Id*.)   Farmer was warned that failure to comply with the requests could result in a physical examination by a physician chosen by the office, departmental suspension and/or criminal charges. (*Id*.)

Thereafter, on November 2, 2009, Defendant, in a written letter to Farmer, followed up on the issue concerning the "evidence found in [Farmer's] office. (Pls.' Ex. O, Letter from Defendant to Farmer (Nov. 2, 2009) (Document 63-3)).   Defendant scolded Farmer for the untimely nature of his submission of the requested written response concerning the "evidence" located in his

workspace, addressed the basis of what constituted evidence in the Summers County Sheriff's Department and how such evidence was to be maintained. (*Id.*)  Defendant also revealed his disbelief that the "CDS" found in Farmer's desk were "over the counter" medications because he believed them to be Valium, Hydrocodone, and Loritab. (*Id.*)  Defendant informed Farmer that the medications found in his desk were photographed and properly secured, and concluded the letter by notifying Farmer that the letter would be placed in his file and that "[n]o further action will be taken in this matter." (*Id.*)[5]   Two weeks later, Dolphin terminated Farmer.

Defendant Dolphin, in a November 16, 2009 letter to Farmer, explained that the latest dismissal was warranted given the following violations of the Summers County Sheriff's Department Directive and Departmental Policy Manual: neglect of duty (loafing, inattention to duties/procedures), willful violation of official procedures and/or directives, willful neglect of duties and falsification of official documents.  (Pls.' Ex. P, Letter from Defendant to Farmer (Nov. 16, 2009) (Document 63-3); Def.'s Ex. 3 (Document 61-3)).   Farmer was given seven days to turn in all uniforms, equipment and property belonging to the Sheriff's Department.

Thereafter, Farmer retained his current counsel and requested a more particular statement of facts and reasons for his dismissal.  On January 27, 2010, Defendant provided the specific charges he believed supported Farmer's termination.  (Pls.' Ex. Q, Letter from Defendant to Farmer (Jan. 27, 2010) (Document 63-3).  As a result of "placing a GPS tracking device on

_____

5    The parties dispute the placement of items in Farmer's desk drawer. The record contains deposition testimony from Plaintiff Janeen Farmer, who was present when Plaintiff Farmer cleaned out his office following his April termination, that no drugs were left in his desk.  (*See* Pls.' Ex. D, Transcript of Janeen Farmer on January 12, 2012 (Document 63-1) at Tr. 28-29).   The Summers County Sheriff Department Office Manager, Cheryl Bratcher, testified consistently that she did not see any drugs or other prescription medication in Farmer's desk drawer after he cleaned it out. (Pls.' Ex. C, Transcript of Cheryl Bratcher on December 6, 2011 (Document 63-1) at Tr. 384-85).   However, Mr. Chellis testified that he, Mr. Cochran and Defendant Dolphin all checked Mr. Farmer's office and desk after Farmer left the premises, and saw various items in the office and desk which were photographed and inventoried. The items included a knife and pills. (Pls.' Ex. E, Transcript of James Chellis on February 6, 2012 (Document 63-1) at Tr. 98 -100.)

5

[Farmer's] patrol vehicle[,]" Defendant Dolphin identified twenty instances between September 14, 2009, and November 3, 2009, where Farmer reported on his patrol log entry that he was at a particular location and his GPS revealed a different location, three instances in which Farmer's patrol vehicle was parked in certain locations and his patrol log did not reflect the entry, and a statement that there were missing times on Farmer's Patrol logs. (*Id.*)   Defendant also asserted that on August 23, 2009, Farmer "[f]ail[ed] . . . to file an incident report, properly label and secure evidence[,] [a]rrest or prosecute a known drug dealer[,]" and on October 13, 2009, failed to respond to a fax transmission from "the U.S. Department of Justice Attorney Mr. John File, regarding Deputy Farmers' [sic] arrest of a convicted felon." (*Id.*)   Defendant explained that two seized weapons were not labeled and an incident report could not be located. (*Id.*)   Defendant also explained that Farmer did not file a written response to his inquiry concerning evidence until after "repeated requests from Cpl. Cochran" were made. (*Id.*)[6]

Farmer, through the representation of counsel, challenged the basis for his November 2009 termination before an impartial panel of the Civil Service Commission.   At the hearing, Farmer had the opportunity to put on evidence and testimony, cross examine witnesses and review and challenge documentary evidence used to support his termination.   The Commission ultimately

---

6   The Court observes that the parties filed two different versions of Dolphin's Explanation Letter purportedly provided to Farmer.   *See also* Def.'s Ex. 4, Letter from Defendant to Farmer (Jan. 15, 2010) (Document 61-4).   The Defendant's exhibit dated January 10, 2010, includes twenty-six alleged instances of falsification of official documents where Farmer allegedly logged his patrol entry location as one place and the GPS tracker showed he was somewhere else, and an allegation that Farmer failed to notify his supervisor of the reason he failed to report for duty when he was absent from K-9 school training on April 22, 2009.   Defendant's version of the letter also includes details which were excluded from Plaintiff's exhibit that, as a result of the October 13, 2009 failure to respond to a U.S. Attorney's fax transmission, the prosecution of the involved case was dropped by the court and that the attorney was investigating why this case was not prosecuted.   Finally, the Court observes that the January 15th letter contains a signature purporting to be that of Defendant Dolphin while Plaintiff's exhibit is unsigned.   Neither party explained the difference between their exhibits in the memoranda.   The Court observes that the Civil Service Commission included a discussion of the April 22, 2009 K-9 school training in its Findings of Fact and Conclusions of law.   This finding suggests that the Commission, at the very least, may have considered the January 15, 2010 version of the letter.

found that the grounds asserted for dismissal failed to establish the requisite "just cause" standard required by W. Va. Code § 7-14-17.[7]   (*See* Def.'s Ex. 6, Deputy Sheriff Civil Service Commission Findings of Fact and Conclusions of Law (Document 61-6)).   The Commission also found that, as the most senior Deputy in the Summers County Sheriff's Department, Farmer should have been paid accordingly after his first reinstatement in May 2009; that Defendant "improperly promoted Deputy Cochran to the position of corporal (with an increase in pay) without competitive testing, notice and any other requirements under the Civil Service statutes"; and that the position of corporal should be immediately vacated by the Sheriff of Summers County."   (*Id*. at 8-9.)   The Commission ordered the reinstatement of Farmer to the position of Deputy, ordered that his pay rate not be less than that of the most senior Deputy, awarded back pay from the period following his termination to the date of his reinstatement and back pay for the difference in his wages from May 15, 2009, and November 16, 2009.   Thereafter, Farmer requested reasonable attorney fees and costs incurred in litigating this matter pursuant to W. Va. Code § 7-14-17.   The Commission awarded Farmer a portion of his requested fees and costs, but excluded the costs which were determined to be unreasonable and unnecessary (*i.e.*, for the delivery of its Findings of Fact and Conclusions of Law and charges billed as investigative services which it found were more accurately characterized as discussions with a fact witness).   The Commission also modified the amount of attorney fees requested by Farmer and his counsel by utilizing an hourly rate within the range of customary rates charged in similar litigation in Summers County, West Virginia, based on its assessment of the case and the experience of counsel. This reduction amounted to a reduction of counsel's hourly rate of $250 to $190.

On March 29, 2010, following Farmer's second reinstatement, Defendant assigned Farmer

---

7   *See* supra n.2.

to serve as a bailiff to the Circuit and Family Courts in the Summers County Courthouse. (Pls.' Ex. U, Letter from Defendant to Farmer (Mar. 29, 2010) (Document 63-5)).   Additionally, Farmer was directed to maintain a visible presence in the courthouse as security when not acting as a bailiff, to assist the prosecutor's office when needed and to maintain a patrol log.   Farmer's office space was moved to the tax office of the courthouse.

On September 15, 2010, Farmer and his wife initiated this civil action.   With leave of the Court, Plaintiffs, on April 19, 2012, filed an Amended Complaint wherein they allege a due process claim actionable pursuant to 42 U.S.C. §§ 1983 and 1988.   Specifically, Plaintiffs allege that, as a result of Defendant Dolphin's misconduct, Farmer was deprived of procedural and substantive due process rights, established in the 14th Amendment of the United States Constitution, "by twice intentionally, deliberately, wrongfully, and/or maliciously depriving [Farmer] of his property right to tenured employment as a Summers County Deputy Sheriff subject to civil service protection against being discharged except for 'just cause' all as protected under West Virginia state law, and the Constitution and Laws of the United States of America."   (Am. Compl. ¶ 19.)   Plaintiffs also allege three other state law causes of action including wrongful termination, outrageous conduct or the tort of intentional infliction of emotional distress and loss of consortium.   (Am. Compl. ¶¶ 18-25.)   Plaintiffs seek punitive damages "[g]iven the nature of the direct and intentional misconduct of Defendant, Edward F. Dolphin[,]" reasonable attorney fees, costs and any other proper relief. (Am. Compl. ¶ 26-27.)

In accordance with the deadline set forth in the First Amended Scheduling Order (Document 56), Defendant now moves for summary judgment with respect to count one.

8

## II.    STANDARD OF REVIEW

The well established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986).   A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. (*Id*.)   The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.   However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."   *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."   *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

Rule 56 of the Federal Rules of Civil Procedure requires that,

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory

9

> answers or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).   In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter."   *Anderson*, 477 U.S. at 249.   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the non-moving party.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).   If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

Defendant asserts that summary judgment is warranted because Plaintiffs cannot maintain a due process violation with respect to either a liberty or property interest.   Defendant contends that Farmer was not denied his procedural due process rights because he was fully compensated during the period following his first discharge in April 2009 and, with respect to his November 2009 discharge, he was compensated during the period following that termination and given notice and an opportunity to be heard.   Defendant asserts that Plaintiffs cannot establish a substantive due process violation because Farmer does not have a fundamental property right to his public employment and because the aggrieved conduct was not so egregious or outrageous as to shock the conscience as is required for such a claim.   Finally, Defendant asserts that Plaintiff does not have a cognizable claim for attorney's fees from Farmer's civil service hearing. (*See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") (Document 62)).

While the Court will consider all of Defendant's assertions, the Court first observes that Plaintiffs, in their opposition, withdrew their pursuit of a due process violation claim on the basis of a liberty interest.   (Plaintiffs' Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment ("Pls.' Opp'n") (Document 64) at 19).   Therefore, to the extent that Defendant moves for summary judgment on that claim, the motion is denied as moot.

Section 1983 of Title 42 of the United States Code provides that every person who, under color of law, subjects any citizen of the United States to the deprivation of any right secured by the Constitution shall be liable in a civil action. 42 U.S.C. § 1983.   The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law . . . . "   U.S. Const., Amend. XIV, § 1.   Under the Due Process clause there are generally three kinds of Section 1983 claims that may be asserted.   A plaintiff may allege: (1) a "state official[] violat[ed] . . . his rights to, *e.g.*, freedom of speech or freedom from unreasonable searches and seizures"; (2) a substantive challenge to "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them[,]" and (3) that the process by which the government action was taken was constitutionally deficient.   (*Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citations and internal quotations omitted).   In this case, Plaintiffs have alleged a due process challenge on the basis of the latter two kinds of claims.

## A.  *Procedural Due Process*

To establish a violation of procedural due process, Plaintiffs "must show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Kendall v. Balcerzak*, 650 F.3d

515, 528 (4th Cir. 2011) (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson,* 566 F.3d 138, 145 (4th Cir. 2009)). "Procedural due process provides merely 'a guarantee of fair procedures—typically notice and an opportunity to be heard.'" *Kendall*, 650 F.3d at 528 – 29 (quoting *Wolf v. Fauquier County Bd. of Supervisors*, 555 F.3d 311, 323 (4th Cir.2009)).   In the context of public employment prior to termination, "the tenured public employee is entitled to oral or written notice of the charges against him, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).   This pre-termination hearing "need not be elaborate" and can lack the "'formality and procedural requisites . . . depending upon the importance of the interest involved and the nature of the subsequent proceedings.'"   (*Id*. at 545 (quoting *Boddie v. Connecticut*, 401 U.S. 371,378 (1971)).

Plaintiffs claim that Defendant deprived Farmer of his "property right to tenured employment as a Summers County Deputy Sheriff."   (Am. Compl. ¶ 19.)   The parties do not dispute that a protected property interest exists likely because public employees may have a constitutionally protected property interest in their employment.   *Loudermill*, 470 U.S. at 542, 546; *Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009)).   Instead, Defendant asserts that Plaintiffs' claim is fatally deficient because, even assuming that Farmer was terminated without notice or an opportunity to be heard, they cannot demonstrate Farmer was deprived of his property interest. (Def.'s Mem. at 4-8.)   In opposition, Plaintiffs argue that procedural due process requires a pre-termination hearing and that Farmer suffered mental distress and emotional distress as a result of the termination without a pre-termination hearing, which makes his claim actionable even if he was awarded back pay.

Both the Supreme Court and the Fourth Circuit Court of Appeals have instructed that "[t]he

first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty.   Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." *Andrew*, 561 F.3d at 269 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)).   Therefore, before considering Plaintiffs' assertion that Farmer was not provided pre-termination notice and given an opportunity to be heard with respect to his two discharges, the Court must determine whether a genuine issue of material fact exists regarding whether Farmer was deprived of his property interest – tenured employment.

Plaintiffs contend, without disputing that Farmer was reinstated after each termination and paid his wages during the periods of his discharge or upon reinstatement, that Farmer was still deprived of a property interest.   In support of this argument, Plaintiffs rely on four assertions: (1) Farmer suffered mental and emotional distress as a result of the lack of a pre-termination hearing and the dismissals without "just cause"; (2) Farmer was represented by an attorney when he filed a grievance over his April 2009 termination, yet he did not receive attorney's fees for such representation following his reinstatement; (3) as a result of his second termination, Farmer was denied full compensation for attorney's fees that he paid; and (4) despite the Civil Service Commission's ruling directing Defendant to "reduce Deputy Thomas Cochran's rank from corporal to deputy . . . Dolphin failed and refused to do so." (Pls.' Opp'n at 18.)

The Fourth Circuit Court of Appeals, in *Holland v. Rimmer,* held that a director of social services terminated without initially receiving an explanation for the termination or a pre-termination hearing, but reinstated less than a month later, did not suffer a deprivation of property for the period of time between his termination and reinstatement because he "received all

the pay and benefits to which he was entitled." *Holland v. Rimmer*, 25 F.3d 1251, 1256-57 (4th Cir. 1994).   There is no dispute that Farmer received his wages throughout the two weeks following his first termination and reinstatement (between April 27, 2009 and May 11, 2009) and following his reinstatement after the November 2009 termination.   Farmer testified at his deposition that he did not proceed with the civil service commission process after the submission of his grievance following the April 2009 termination because he was reinstated as a deputy. Plaintiffs do not identify any evidence in the record that Farmer sought further relief from the commission for his alleged emotional distress after the April termination or for attorney fees for his representation at the grievance stage.   Moreover, Plaintiffs cannot now at this stage assert that such an award was denied without due process of law or is now warranted when it was never requested.   Importantly, Plaintiffs did not request any such relief in either the Grievance to Defendant Dolphin or after receipt of Defendant Dolphin's letter of reinstatement discussing the payment of his wages.   Plaintiffs' assertions of entitlement to emotional damages and attorney fees in this instance amount to a unilateral expectation, not a property interest.   *See Royster v. Bd of Trustees of Anderson County School Dist. No. Five*, 774 F.2d 618, 620 (4th Cir. 1985). Plaintiffs have not demonstrated how such an expectation is actionable where there has been no finding of a due process violation. While Plaintiffs are correct in that a successful claim of procedural due process violation can lead to an award of emotional and mental distress damages, as held in *Carey v. Piphus*, 435 U.S. 247 (1978), Plaintiffs are attempting to leap over the centrality of the prima facie due process claim – the demonstration of a deprivation – to assert a claim for damages.[8]   Without the deprivation demonstration, the Court does not consider the adequacy of

---

[8]     The Court observes in Carey that the case was before the Supreme Court in the posture of litigation where there was already a finding of a procedural due process violation. That holding was not challenged before the Supreme

14

the process employed by the state actor.   Consequently, the Court lacks the occasion to opine on allegations of purported damages.   In this case, Plaintiffs have asserted a property interest in tenured employment, not a property interest in emotional distress damages. Additionally, Plaintiffs cannot support their procedural due process claim with a request for attorney's fees where Farmer was awarded attorney's fees and costs by the Commission due to his second termination.   West Virginia Code, Section 7-14-17(b), sets forth the remedy for a deputy disputing an award of attorney fees. It provides for an immediate right of appeal to the circuit court within ninety days of the civil service commission's final order.   The record does not support that Plaintiffs availed themselves of the available procedure for challenging either the lack of or a deficiency of any purported request for attorney's fees.   Moreover, Plaintiffs have not established that Defendant's actions deprived him of attorney's fees.

Finally, Plaintiffs contend that Defendant's refusal to "reduce" Deputy Cochran's rank from corporal to deputy demonstrates a deprivation of Farmer's property interest.   The evidence in the record does not support such a claim.   First, Plaintiffs' own exhibits include deposition testimony from Mr. Cochran wherein he explains that Defendant Dolphin made the determination that he be a sergeant rather than corporal. (Pls.' Ex. T. at Tr. 7.)[9]   Plaintiffs have not identified any evidence in the record disputing the same.   Moreover, the Civil Service Commission found that Farmer was the most senior Deputy in the Summers County Sheriff Department and that his pay rate could not be lowered to any rate that did not correspond to such seniority.   Therefore, any protected right Plaintiffs now attempt to show relating to Farmer's rank is without merit, since Plaintiffs have not shown that Deputy Farmer's right to a rank has been deprived.

---

Court. This necessarily means that a determination of the deprivation of a property interest had already been made.
9    *See supra* n.1.

At this posture of the litigation, Plaintiffs, as the non-moving parties, are charged with identifying genuine disputes of material fact to preclude an award of summary judgment. Plaintiffs have not done so.  Plaintiffs have not demonstrated that Farmer was deprived of a protected property interest.   "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Bodkin v. Town of Strasburg*, Civil Action No.5:08cv00083, 2009 WL 1806656, *2 (W. D. Va. June 24, 2009) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)). Therefore, according all reasonable inferences to the Plaintiffs, the Court finds that Defendant is entitled to summary judgment on Plaintiffs' procedural due process violation claim.

## B.  *Substantive Due Process*

The Fourteenth Amendment Due Process Clause does more than just guarantee fair process.  The Clause covers "a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'"   *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)); *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) (observing that the Due Process Clause was intended to prevent a government official "from abusing [executive] power, or employing it as an instrument of oppression.") (citations omitted).  "[D]ue process protection in the substantive sense limits what the government may do in both its legislative and its executive capacities, [and the] criteria to identify what is fatally arbitrary differ[s] depending on whether it is legislation or a specific act of a governmental officer that is at issue."   (*Lewis*, 523 U.S. at 846) (internal citations omitted.)   In the context of executive action, like that at issue here, it is "only the most egregious

16

official conduct [that] can be said to be 'arbitrary in the constitutional sense[.]'" *Id.* (quoting *Collins*, 503 U.S. at 129.)  The extension of protection from substantive due process violations is only to "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991).

Defendant argues that Plaintiffs' substantive due process claim fails because Farmer does not have a fundamental property right in his public employment and that Defendant Dolphin's conduct was not so egregious to shock the conscience.  In a shift from the allegation in the governing pleading, Plaintiffs concede that their asserted property right, to Farmer's tenured employment as a deputy sheriff, "is not a 'fundamental' property right embodied in the United States Constitution." (Pls.' Opp'n at 9).  Instead, Plaintiffs argue that case law recognizes a "category of acts which may serve as the basis for an individual to make a claim for a violation of substantive due process rights" when there is no deprivation of a "fundamental right," but where a government official, acting under color of law, commits misconduct that is "conscience shocking" and so oppressive that it denies a person substantive due process of the law. (*Id.* at 8) (citing *Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999) (in this case the circuit court found no substantive due process violation where parole commission erroneously granted parole to an inmate and upon discovery of its error revoked his parole; in doing so, the court discussed the distinction between the fatal arbitrariness criteria required in challenges to executive and legislative decisions); *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (where the court included in its discussion of the distinction between procedural and substantive due process that

17

that "[s]ubstantive due process serves as a vehicle to limit various aspects of potentially oppressive government action[,] [by as an example,] . . . serv[ing] . . . as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally 'conscience shocking,' hence oppressive, as to rise to the level of a substantive due process violation.").[10]   At bottom, Plaintiffs assert that their claim is not fatally flawed because they have not shown that a "fundamental" right exists.   Rather, Plaintiffs argue that the relevant facts of the circumstances regarding Farmer's two terminations and Defendant's post-reinstatement treatment of Farmer amount to actionable misconduct.   Defendant, without challenging the "category" utilized by Plaintiffs to assert their substantive due process claim, maintains that Plaintiffs have merely asserted conclusory statements of conjecture and speculation, without factual support, which does not create a genuine dispute of material fact. (Def.'s Reply at 1-7.)

The Fourth Circuit Court of Appeals has instructed that to succeed on a claim for violation of substantive due process, Plaintiffs must demonstrate: "(1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency."   *Ruttenberg v. Jones*, 283 F.App'x. 121, 128-129, (4th Cir. 2008) (quoting *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995); see also Phillips v. Gaston County, No.3:04-CV538-H, 2007 WL 922921, at *7, n.7 (W.D. N.C. Mar. 26, 2007), *aff'd*, 278 F.App'x 276 (4ths Cir. 2008), *cert. denied*. 555 U.S. 1085 (2008) (due process challenge regarding

---

10    The Court is not persuaded by the cited authority for the proposition on which Plaintiffs rely in the context of due process allegations involving public employment.   This Court observes that *Howard*, which concerns an inmate's challenge to his placement in protective segregation and increased security institutions without a hearing or action by prison officials to move him to general population, has not been cited approvingly, or otherwise, by the Fourth Circuit Court of Appeals.   Moreover, the Court does not glean from *Hawkins* that Plaintiffs, without any showing of a protected right, may carry the day on their substantive due process claim solely by demonstrating that a government actor's conduct was conscience shocking.

"property interest" in continued employment). The Supreme Court has instructed that "in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8.   District Courts have been warned that "the measure of what is conscience shocking is no calibrated yard stick[.]" *Lewis*, 523 U.S. at 847.   In reliance upon *Lewis*, the Fourth Circuit Court of Appeals has stated that "[d]efining conduct that shocks the conscience does not draw on any traditional standard of liability from tort law but rather refers, as a constitutional construct of substantive due process to 'conduct intended to injure in some way unjustifiable by any government interest.'" *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317, 312 (2012) (quoting *Lewis*, 523 U.S. at 849.)[11]   If the test is not met, the Court's inquiry ends and the claim fails "with no need to inquire into the nature of the asserted liberty interest." *Hawkins*, 195 F.3d at 738.   "If it does meet the threshold test of culpability, inquiry must turn to the nature of the asserted interest, hence to the level of protection to which it is entitled." *Id.* (citing *Lewis*, 523 U.S. at 847, n.8.)

Although the Court is suspect of Plaintiffs' contention of what is required to "make a claim for a violation of substantive due process rights" in this context (Pls.' Opp'n at 8), the Court finds that even under the rubric of their demonstration of a prima facie case, the claim fails.   Plaintiffs identify fourteen varied facts which purport to be evidence that Defendant's actions constituted misconduct that "shocks the conscience."   Generally, Plaintiffs assert the following: (1) Defendant terminated Farmer in April 2009 with knowledge that he did not have "just cause" to do so; (2) Defendant, Mr. Chellis and Mr. Cochran placed prescriptions medications in Farmer's desk

---

11      *See Slaughter*, 682 F.3d at 321 (circuit court observing that Supreme Court has made clear that a deliberate indifference standard "does not apply to persons in an employment relationship with the government.") (citing *Collins*, 503 U.S. at 128.)

drawer after his April 2009 termination; (3) Mr. Chellis was promoted to chief deputy and Mr. Cochran was promoted to corporal without civil service testing; (4) Farmer was reinstated without a hearing and demoted to the lowest level of law enforcement; (5) Following Farmer's reinstatement, Dolphin retaliated against him for "successfully challenging the April 27, 2009 discharge" by (a) advising Farmer that an internal affairs investigation had been initiated with respect to pills and evidence found in his office, (b) placing a GPS tracking device on Farmer's police cruiser without his knowledge, (c) "press[ing] Farmer for a written explanation about the "evidence" in his office, "chastis[ing]" Farmer about his description and handling of evidence, and indicating that the issue of the prescription medication was "concluded," (d) terminating Farmer for a second time on reasons that were false, fabricated and without merit; (6) Farmer hired counsel and requested a hearing before the Civil Service Commission after the November 2009 termination; (7) Defendant signed and backdated daily entry logs "[i]n an effort to support allegations that Farmer falsified his daily log sheets" and to attempt to present the logs as evidence at the Civil Service Commission hearing; (8) Defendant, while under oath at the commission's hearing, initially denied "alter[ing] the daily log sheets" and only admitted doing so when confronted by Farmer; (9) Defendant threatened witness with retaliation for her testimony about her knowledge of the prescription medications found in Farmer's desk; (10) the Commission ruled that Farmer was not discharged for "just cause"; (11) The Commission ordered that Corporal Cochran be reestablished as a deputy, not a corporal; (12) The Commission failed to grant Farmer all his attorney's fees; (13) After his last reinstatement, Defendant retaliated against Farmer by moving his office to the tax office, assigning him to the duty of bailiff and denying an opportunity to work for overtime pay; (14) Defendant failed to reduce Cochran's rank from corporal to deputy

as the Commission directed.   (Pls.' Opp'n at 14-15.)

Upon a review of the totality of the facts alleged in this matter, the Court finds these factual assertions do not rise to the level of arbitrary state action that shocks the conscience.   The asserted facts are not actionable to satisfy the "shocks the conscience" test as they either: (1) lack an evidentiary basis to demonstrate 'conduct intended to injure in some way unjustifiable by any government interest (*see* factual statement 1); (2) were remediable by post-deprivation state remedies (*see* factual statements 3, 4, 13, 14); (3) constitute mere speculation (*see* factual statements 1, 2, 5(a), 5(c)); or (4) are not of the nature of an egregious, oppressive or arbitrary character (*see* factual statements 5(b), 5(d) 7, 8, 9).   Plaintiffs have not shown that Defendant's actions, in effectuating the April 2009 termination, constituted conduct intended to injure Farmer or taken with knowledge that the termination violated the West Virginia's requirement for "just cause" based dismissals.   This is so where the evidence in record indicates that Defendant Dolphin determined that the termination was warranted because he had lost trust in Farmer's abilities.   Further, Defendant testified that he later determined that reinstatement was appropriate due to the manner in which Farmer was terminated.[12]   There is no reasonable inference to be drawn that can take the April 2009 termination, without just cause, outside the realm of negligent conduct. The Supreme Court has made clear that the "due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm," *Lewis*, 523 U.S. at 848, and held that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."   (*Id.*) (citing *Daniels*, 474 U.S. at 849.)

---

12      *See* supra n.4.   The Court recognizes that the parties did not provide the full transcript of Defendant's testimony in their exhibits.   However, the materials cited in this regard provided a view as to what Defendant intended with the April 2009 termination.

Moreover, the Court does not credit Plaintiffs' factual statements, concerning the promotions made by Defendant of Deputies Chellis and Cochran or the demotion of Farmer, as actionable conduct surviving a summary judgment challenge. (Pls.' Opp'n ¶¶ 3-4, 13-14).   West Virginia law provides a procedure by which an aggrieved deputy may challenge any demotion, reassignment or termination.   Indeed, Farmer sought the use of portions of that procedure in this case.   With respect to his April 2009 termination, the evidence indicates that Mr. Farmer sought in a grievance only his reinstatement as a deputy sheriff and "make-whole relief as to pay and benefits."   As noted above, the requested relief was granted.   Thereafter, Farmer did not seek further review of his seniority in the department or that of others, a hearing with respect to the termination (notwithstanding his reinstatement) or any relief he believed he was still owed, nor did he seek to challenge his assignment as a bailiff or the lack of an opportunity for overtime pay following his reinstatement after the November 2009 termination.   Moreover, Plaintiffs do not dispute the testimony of Mr. Cochran that the Civil Service Commission required him to be removed from the corporal position, and that he was given a civil service test and later designated a sergeant, not a corporal.[13]   In West Virginia, the Sheriff is not the ultimate policy maker when it comes to hiring, promotions and terminations.   The Civil Service Commission is available to hear matters brought before it to handle the very issues stated here by Plaintiffs.   The establishment of a post-deprivation state procedure wholly available to Plaintiffs to address and correct any inappropriate actions by the Defendant negates the existence of a substantive due process claim.

Additionally, the Court has considered Plaintiffs' assertions regarding the prescription medications in his desk drawer and the "evidence" found within Farmer's office.   Plaintiffs have not set forth any evidence that Defendant, Mr. Chellis or Mr. Cochran indeed "planted" the

---

[13]    Mr. Chellis is no longer working in the Summers County Sheriff Department.

"prescription medications" in his desk.   Plaintiffs have merely proffered that Farmer, his wife and Ms. Bratcher did not see the pills in the drawer when he cleaned his office following his April 2009 termination.   The Court finds that it simply requires too many inferential steps to attribute the "plant[ing]" of the pills by Defendant and others based on the record before the Court.   The Court further finds that it was not arbitrary or oppressive for Defendant to inform Farmer of the initiation of an internal affairs investigation into his concerns about the possession of prescription medications and the handling of evidence maintained in a location outside of the evidence room. The Sheriff has an appreciable interest in assuring the storage and chain of custody of any evidence seized, confiscated or obtained during law enforcement duties.   The fact that an investigation was initiated and Defendant sought written input from Farmer about his concerns does not shock the conscience such that it would support a substantive due process claim.

Finally, the Court has also considered Plaintiffs' assertion that Defendant retaliated and fabricated evidence against Farmer to prompt his termination by utilizing a GPS tracker without his knowledge on his police cruiser, intimidating a witness prior to the Commission hearing, back-dating daily log entries and testifying inconsistently about the log entry dates during the hearing. There is no genuine dispute that the GPS tracker was placed on vehicles to check maintenance and patrol patterns or that Ms. Bratcher, the Commission hearing witness who purportedly felt threatened by Defendant, never testified at the hearing. While the Court is troubled by the covert actions of a leader in the Summers County Sheriff's Department, the Court finds that these acts are not conscience shocking *per se*. However, there is no dispute that Defendant altered past daily logs to include his signature and date of review on the patrol daily logs submitted to the Commission hearing panel.   There should be no dispute that Defendant's surreptitious action to

23

back-date the patrol log entry sheets smacks of dishonesty.   Affording all reasonable inferences to the non-moving party, as the Court must on a motion for summary judgment, results in an inference that Defendant took this action to bolster his justification for termination before the members of the Commission panel.   It could also be reasonably inferred that Defendant wanted to give the Commission the perception that he reviewed the patrol logs closer in time to the date they were submitted, rather than solely in preparation for submitting a written explanation of Farmer's termination or in preparation of his testimony to the Commission panel.

While the Court is unable to find that this intentional act shocks the conscience in the constitutional sense, the Court acknowledges that it could arguably be viewed as an act of oppression or an abuse of power.   However, the Court finds this negligible fact is not material such that it precludes summary judgment in favor of the Defendant.   This is so, where Plaintiffs neither demonstrate a prima facie case for a substantive due process violation, nor the means to support such a claim.   The "shocks the conscience" test has a second step as noted in *Hawkins* 195 F.3d at 738(citing *Lewis*, 523 U.S. at 847, n.8.). If the court finds that the threshold test of culpability has been met, a plaintiff must still prove an asserted interest and the level of protection to which it is entitled.   This, Plaintiffs have not done.   Plaintiffs have fatally attempted to side step any demonstration of a protected right or interest in asserting this constitutional claim.

In light of the foregoing, the Court finds that there are no genuine disputes of a material fact that a substantive due process violation has occurred.   Consequently, Defendant is entitled, as a matter of law, to summary judgment on this substantive due process violation claim.

## C.  *Attorney Fees*

Defendant also moves for the dismissal of Plaintiffs' Section 1983 claim for attorney's fees

24

requested pursuant to 42 U.S.C. § 1988.   Defendant asserts that Plaintiffs are attempting to claim entitlement to attorney fees incurred in connection with the legal representation before the Civil Service Commission hearing.   Defendant asserts that such an entitlement is not found anywhere in the Constitution or federal law and that Plaintiffs must allege a violation of a constitutional right for such an entitlement in their Section 1983 claim.

Plaintiffs, in opposition, contend that the Commission denied Farmer all of his requested fees because it "was used to paying" a certain hourly rate lower than that applicable to Plaintiffs' counsel, and that its denial of all of the fees does not negate Mr. Farmer's contractual obligation to pay the fees.   Plaintiffs assert that Farmer was required to hire an attorney only because of Defendant's conduct, and the failure to obtain all of the attorney's fees supports the procedural and substantive due process claims.

The Court is not persuaded that Plaintiffs are entitled to the award of attorney's fees they seek.   As an initial matter, the Court observes that applicable West Virginia law provides for the manner in which an aggrieved deputy may challenge the amount of attorney fees awarded by the Commission.   *See* W. Va. Code § 7-14-17(b) ("In the event either the sheriff or the deputy objects to the amount of the attorney fees awarded to the deputy, the objecting party has an immediate right of appeal to the circuit court. Any appeal must be taken within ninety days from the date of entry by the civil service commission of its final order.")   There is no record in this case that Plaintiffs ever sought to avail themselves of this appellate procedure.   Such a failure to utilize the available procedure is fatal to any due process claim.   Further, Plaintiffs neither cited any authority for the proposition that they are entitled to the *entirety* of their request for attorney's fees, nor, made any substantive challenge to the Commission's determination that a reduction was

25

warranted.    Plaintiffs have merely asserted a rationale common to every litigant seeking

representation of counsel to vindicate a wrong—that a contractual obligation to pay the fees may

remain if a determination for such an award does not cover the litigant's full contractual

obligation.    Finally, the "state action" challenged in this context was not undertaken by the party

Defendant in this matter.    The amount of the attorney's fee award was determined by the Civil

Service Commission.    Therefore, this Defendant cannot be liable for any purported claim that

Plaintiffs were wrongfully denied the fees they requested.    For these reasons, the Court finds that

there are no genuine disputes of material fact with respect to this claim and that Defendant is

entitled to summary judgment as a matter of law.

### D.  Remaining Claims

Finally, in Counts Two through Five, Plaintiffs assert state causes of action.   (*See* Am.

Compl. ¶¶ 20-27.)   28 U.S.C. § 1367(a) provides that this Court may employ its discretion to

exercise supplemental jurisdiction over such claims.   *See* 28 U.S.C. § 1367(c)(3) (providing that a

"district court[] may decline to exercise supplemental jurisdiction over a claim under subsection

(a) if . . . the district court has dismissed all claims over which it has original jurisdiction.")   Given

the procedural posture of this litigation, where the parties have completed discovery and a trial

date looms less than a month away, the Court does hereby exercise its discretion to maintain its

supplemental jurisdiction over Plaintiffs' state claims.

### IV.    CONCLUSION

Upon consideration of the foregoing, the Court does hereby **ORDER** that Defendant's

Motion for Summary Judgment (Document 61) be **GRANTED**.    The Court finds that there are no

genuine disputes of material fact with respect to any due process claim or with respect to a claim for attorney's fees.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   October 10, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

27